**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Pedro Prieto Gonzalez,<br><br>Petitioner,<br><br>v.<br><br>Luis Rosa, Jr., et al.,<br><br>Respondents. | No. CV-26-03223-PHX-DWL (MTM)<br><br>**ORDER** |

This is a habeas corpus action under 28 U.S.C. § 2241 in which Petitioner challenges his immigration detention. The Court directed Respondents to respond to the petition. (Doc. 4.) Respondents did so (Doc. 7) and Petitioner declined to file a reply. For the reasons that follow, the petition is denied.

## I.     Background

Petitioner is a citizen and native of Cuba who was admitted to the United States in 1980 as an asylee and became a lawful permanent resident ("LPR") in 1985. (Doc. 7-1 ¶¶ 5-7.) In 1990, Petitioner was convicted of attempted child molestation, which rendered him removable under the Immigration and Nationality Act ("INA"). (*Id.* ¶¶ 9-10.) On July 11, 2005, Petitioner was ordered removed to Cuba and he waived appeal of that decision, which rendered his removal order final that day. (*Id.* ¶ 13.) On October 12, 2005, Petitioner was released on an Order of Supervision ("OSUP"). (*Id.* ¶ 14.) On March 20, 2026, Petitioner was redetained. (*Id.* ¶ 15.)

On May 7, 2026, Petitioner initiated this action. (Doc. 1.) On further reflection,[1] the petition alleges that Petitioner is entitled to release for four reasons (1) he was redetained without being provided a pre-deprivation hearing; (2) immigration officials failed to follow their own regulations for revoking his OSUP; (3) the immigration judge violated the law by deeming him "detained on 8 U.S.C. § 1226(a) not 8 U.S.C. § 1225" and denying a bond hearing on that basis; and (4) his conditions of confinement are unlawful. (*Id.* at 7-8.)

## II.    Analysis

As for Claim One, to the extent Petitioner contends that he had a constitutional right to a pre-deprivation hearing before his OSUP could be revoked, the Court respectfully disagrees for reasons stated in prior orders. *See, e.g., Nguyen v. Archambeault*, No. CV-25-04052-PHX-DWL (D. Ariz. 2025), Doc. 15 at 7 ("[T]here is an ongoing debate in the lower courts about whether an alien in Petitioner's situation is entitled, as a matter of procedural due process, to a *pre*-revocation hearing conducted by an independent decisionmaker before his OSUP may be revoked based on alleged changed circumstances. Although some courts have held or suggested that such a hearing is constitutionally required, this Court recently rejected that argument on the ground that the procedures set forth in § 241.13(i)(3)—which provide a mechanism for promptly challenging the basis for the revocation decision—supply all of the process that is due in this context.").

As for Claim Two, under ICE's regulations, it is permissible to detain an alien (such as Petitioner) who was previously ordered removed from the United States and then released on an OSUP "if, on account of changed circumstances, the Service determines

---

[1]    In the screening order, the Court construed the third claim in the petition as alleging that Petitioner's "removal is not substantially likely to occur in the reasonably foreseeable future and, as a result, his detention is impermissible" under *Zadvydas v. Davis*, 533 U.S. 678 (2001). (Doc. 4 at 2.) In their response, Respondents "do not agree" with this construction and contend that "[t]he third count of the Petition states clearly that '[the] Immigration Judge . . . violated Petitioner's Fifth Amendment Due Process rights when he was denied a bond hearing . . . [despite the fact that] he was detained on 8 U.S.C. § 1226(a) not 8 U.S.C. § 1225.' This is a legally distinct claim from a *Zadvydas* claim." (Doc. 7 at 2 n.1.) On reflection, Respondents are correct—the petition does not mention *Zadvydas* or prolonged detention and cannot, even when given a liberal construction, be fairly construed as asserting such a claim. *United States v. Sineneng-Smith*, 590 U.S. 371, 375-76 (2020).

that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). However, ICE's regulations also set forth certain procedural requirements that apply in this context:

> Upon revocation, the alien will be notified of the reasons for revocation of his or her release. The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification.

*Id.* § 241.13(i)(3).

A habeas petitioner may challenge ICE's compliance with these regulations under the *Accardi* doctrine, which is "a commonplace [rule] of administrative law that an agency must obey its own rules even if it had no obligation to create those rules in the first place." 32 C. Wright & A. Miller, Federal Practice and Procedure § 8172 (2d ed. Sept. 2025 update). *See also Alcaraz v. INS*, 384 F.3d 1150, 1162 (9th Cir. 2004) ("The legal proposition that agencies may be required to abide by certain internal policies is well-established."). To be clear, relief is not automatically warranted under the *Accardi* doctrine whenever an agency violates its own regulations—such a violation can be harmless. *United States v. Calderon-Medina*, 591 F.2d 529, 530-31 (9th Cir. 1979). *See also Grigorian v. Bondi*, 2025 WL 2604573, *9 (S.D. Fla. 2025) ("It is a rather unremarkable proposition that an agency must abide by its own regulations. Of course, not every agency misstep will compel reversal of agency action, much less release of someone in custody.") (cleaned up). Even so, many district courts have granted habeas relief based on ICE's violation of the procedural requirements set forth in § 241.13 when purporting to revoke an OSUP. *See, e.g., Phan v. Noem*, 2025 WL 2898977, *5 (S.D. Cal. 2025) ("The Court's research indicates that every district court, except one, to consider the issue has determined that where ICE fails to follow its own regulations in revoking release, the detention is unlawful and the petitioner's release must be ordered. This Court reaches the same conclusion. ICE's failure to comply with both 8 C.F.R. § 241.4 and 8 C.F.R. § 241.13 violated Petitioner's due process rights.") (citations omitted); *Grigorian*, 2025 WL 2604573 at *10 ("The failure to provide Petitioner with an informal interview promptly

after his detention or to otherwise provide a meaningful opportunity to contest the reasons for revocation violates both ICE's own regulations and the Fifth Amendment Due Process Clause. This compels Petitioner's release. Courts around the country have concluded likewise."). After all, "[t]he opportunity to contest detention through an informal interview is not some ticky-tacky procedural requirement; it strikes at the heart of what due process demands." *Grigorian*, 2025 WL 2604573 at *9.

Nevertheless, Petitioner is not entitled to habeas relief based on his OSUP revocation claim in Claim Two for the simple reason that he has not established a violation of the applicable regulations. Although Petitioner asserts, in his petition, that he never received a revocation notice, Respondents have challenged that assertion by providing sworn evidence that Petitioner did, in fact, receive both the revocation notice and the prompt informal interview required by the regulations. (Doc. 7-1 ¶¶ 16-17.) By failing to file a reply, Petitioner has effectively failed to challenge Respondents' evidence on these points and abandoned his OSUP revocation claim. On this record, relief is not warranted.

As for Claim Three, Respondents correctly note that "Petitioner cannot prevail on the claim as stated because he is not subject to detention under either Section 1226 or Section 1225; as a person with a final order of removal, he is subject to detention under Section 1231." (Doc. 7 at 2 n.1.)

As for Claim Four, it was dismissed in the screening order "because the claim arises, if at all, under civil rights law, not habeas corpus law." (Doc. 4 at 2.)

…

…

…

…

…

…

…

…

- 4 -

Accordingly,

**IT IS ORDERED** that Petitioner's petition for writ of habeas corpus (Doc. 1) is **denied**. The Clerk shall enter judgment accordingly and terminate this action. The denial is without prejudice to Petitioner's ability to file a future § 2241 petition asserting a *Zadvydas* claim.

Dated this 20th day of July, 2026.

Dominic W. Lanza
United States District Judge

- 5 -